PREVOST *v.* TOWNSHIP OF MACOMB.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—CONSTRUCTION.
   The basic requirement in the construction of zoning ordinances is that the intent of the ordaining body be discovered and given effect.

2. TOWNSHIPS—ZONING ORDINANCES—CONSTRUCTION.
   A township zoning ordinance must be construed reasonably with regard both to the objects sought to be attained and to the structure of the ordinance as a whole.

3. SAME—ZONING ORDINANCE—CONSTRUCTION—MEANING OF WORDS.
   Introductory paragraph to one article of comprehensive township zoning ordinance, which provides, in part, that "any lawful use of land or buildings not herein expressly prohibited or provided for shall be a lawful use in all M–2 districts, *"held,* to refer to uses mentioned anywhere in ordinance, in view of general scheme of ordinance, which is to avoid mingling of activities in any of the seven zoning districts for which specific allowable uses are prescribed (Macomb Township Zoning Ordinance No 10).

4. SAME—ZONING ORDINANCE—CONSTRUCTION.
   Township zoning ordinance which provides that "any lawful use of land or buildings not herein expressly prohibited or provided for shall be a lawful use in all M–2 districts" *held,* to forbid operation of a gun club in a M–2 district when another article of the ordinance provides for operation of gun clubs in AG districts (Macomb Township Zoning Ordinance No 10).

5. SAME—ZONING ORDINANCE—NONCONFORMING USE—INTERPRETA-
   TION—EVIDENCE.
   Admission into evidence of list of nonconforming uses compiled by zoning board soon after township zoning ordinance took

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 6] 58 Am Jur, Zoning §§ 11, 12.
   Validity and construction of zoning or building ordinance prohibiting or regulating subsequent alteration, extension, or substitution of existing buildings.   64 ALR 920.
[5] 58 Am Jur, Zoning §§ 224, 258.
[7] 5 Am Jur 2d, Appeal and Error § 1009.

effect *held*, permissible, because the list was evidence of a contemporary construction and application of the zoning ordinance by the body charged with its interpretation and administration (Macomb Township Zoning Ordinance No 10).

6. SAME—ZONING ORDINANCE—CONSTRUCTION.

Argument that interpretation of provision in ordinance that "any lawful use of land or building not herein expressly prohibited or provided for shall be a lawful use in all M–2 districts" to exclude uses mentioned in other articles of ordinance is unreasonable because the ordinance mentions M–1 districts and enumerates uses therein but fails to designate any lands as M–1 districts, thus foreclosing M–1 uses anywhere in township, *held* fallacious, since ordinance may be amended in future to allow M–1 uses (Macomb Township Zoning Ordinance No 10).

7. COSTS—PUBLIC QUESTION—TOWNSHIP ZONING ORDINANCE.

No costs are allowed on appeal by landowner from decision of trial court that township zoning ordinance prevents him from using land for gun club, a public question being involved (Macomb Township Zoning Ordinance No 10).

Appeal from Macomb; Carroll (Howard R.), J. Submitted Division 2 December 5, 1966, at Lansing. (Docket No. 359.)   Decided April 13, 1967.   Leave to appeal denied by Supreme Court June 20, 1967. See 379 Mich 768.

Complaint by Douglas Prevost, doing business as Maple Grove Gun Shop, against Township of Macomb, a municipal corporation, and Arnold Thoel, its building inspector and zoning administrator, for injunctive and declaratory relief from enforcement of township zoning ordinance. Judgment for plaintiff granting part of relief requested and denying other relief. Plaintiff appeals. Affirmed.

*Starkey & Gentz*, for plaintiff.

*William P. Hull*, for defendants.

McGREGOR, J. Appellant Douglas Prevost has operated a gun club in the township of Macomb

since 1947. Over the years, the size of the gun club operation has steadily increased and at the present time includes pistol, trap, skeet, and duck tower shooting.

In 1959, the appellee township of Macomb adopted a comprehensive zoning ordinance. The land occupied by the gun club was zoned partly R-1 (community one-family residential district) and partly M-2 (general manufacturing district). Shortly after the zoning ordinance was adopted, the gun club operation was declared to be a legally nonconforming use of land in both of the zoning districts. By the provisions of article 4, § 4.21 of this ordinance, such use could not thereafter be expanded.

In the spring of 1964, Prevost sought to expand the gun club operations. The expansion was in response to increased public demand for such facilities and also to provide space for a military contract which Prevost had undertaken. Prevost relocated part of his existing pistol range and completed a partially existing trap shooting line in the space made available by the relocation of the pistol range. At the same time, Prevost sought to construct a wholly new 1,000-inch (27–1/2 yard) rifle range on land located in a M-2 zone. The township took the position that a new range was not a permissible land use within a M-2 district. Prevost, relying on advice from an attorney, nevertheless began construction of the range. A stop-work order was issued by the township building inspector and criminal proceedings were instituted against Prevost.

In response to the action taken by the township, Prevost filed a complaint in the Macomb county circuit court. He sought an injunction restraining the township from interfering with his use of M-2 land for a new rifle range. The township filed an

answer and also a cross complaint seeking to enjoin Prevost from using any of the facilities which he had built since the date of the adoption of the zoning ordinance.

The hearing of the cause resulted in a judgment in which neither party completely prevailed. Prevost was allowed to continue to use his relocated pistol range and complete trap line, and the township was enjoined from interfering with this use. Prevost was, however, enjoined from constructing his new rifle range. The trial court found that gun clubs were not permitted in M-2 zones and thus the new range was a prohibited land use. From this judgment, Prevost appeals.

The only question that need be decided on the appeal is whether gun clubs are prohibited in districts zoned M-2. The construction placed on article 12 of the ordinance, the article defining M-2 zones, will be determinative of this question.

The zoning ordinance adopted by the township of Macomb in 1959 can best be characterized as an "exclusive type" of ordinance. The ordinance provided for eight districts:

AG Districts—Agricultural district

R-1-S Districts—Suburban one family residential districts

R-1 Districts—Community one family residential districts

R-2 Districts—Two family residential districts

R-3 Districts—Mobile home districts

C Districts—Commercial districts

M-1 Districts—Manufacturing districts

M-2 Districts—General manufacturing 2 districts

(Macomb township zoning ordinance No 10.)

The drafters of the ordinance were intent on segregating various activities into separate zoning districts. Or, as was recited in the statement of purpose, article I, § 1.02:

"The township is divided into districts of such number, shape, and area, and of such common *unity of purpose,* adaptability or use, that are deemed most suitable to provide for the best general civic use." (Emphasis supplied.)

The thread which runs throughout the ordinance is unity of purpose. Each zoning district is devoted to uses which will render the district a homogeneous whole when the district is fully developed.

The drafters of the zoning ordinance chose a specified use format to delineate the allowable uses of land within a district. With one exception, each article of the ordinance which defines a zoning district contains the following language in its introductory paragraph:

"(A) All buildings shall be erected and all land shall be used only for one or more of the following specified uses."

Thereafter each article specifically sets out the allowable land uses within the zoning classification.

The lone exception to this drafters' format occurs in article 12 of the ordinance; the article defining M-2 districts. The introductory paragraph to article 12 reads, in part:

"Any lawful use of land or buildings not herein expressly prohibited or provided for shall be a lawful use in all M-2 districts when such uses shall comply with the following regulations."

The present controversy revolves around the use of the word "herein" in article 12. Does "herein" refer to the whole ordinance or only to the provisions of article 12?

The general principles relating to construction of ordinances apply to the construction of zoning ordinances. The basic requirement is that intent be discovered and given effect. *Dearborn Fire*

*Fighters Association* v. *City of Dearborn* (1949), 323 Mich 414. To accomplish this purpose, the entire ordinance must be read together:

"A zoning ordinance must be construed reasonably with regard both to the objects sought to be attained and to the general structure of the ordinance as a whole." *Fass* v. *City of Highland Park* (1948), 320 Mich 182, 186, on rehearing (1948), 321 Mich 156.

It is clear that the purpose and intent of the drafters of this ordinance was to create homogeneous use areas by confining each district to a limited number of compatible uses. Further, the drafters chose not to allow higher uses in lower zones. For instance, residential building is not permitted in areas zoned commercial. The ordinance avoids the mingling of activities in any of the seven zoning districts for which specific allowable uses are prescribed. Did the drafters abandon this exclusive use goal in the M-2 zone and destine the M-2 zone to a "hodge-podge" development of incompatible uses? We cannot believe that this was the drafters' intention.

The drafters did not actually depart from their specified use format in article 12. Rather, they incorporated by reference the uses delineated as allowable uses in the other zones and made them prohibited uses in the M-2 zones. By so doing, the drafters devoted M-2 zones exclusively to general manufacturing. This is the only interpretation that can be placed on article 12 which renders it consistent with the exclusive use theme, which is the guiding purpose and intent of the rest of the ordinance. *Township of Pittsfield* v. *Malcolm* (1965), 375 Mich 135. The words "not herein expressly prohibited or provided for" refer to the provisions of the entire ordinance.

Moreover, this reference to the provisions of the entire ordinance is consistent with a careful reading of article 12. Article 12, in effect, provides for the use of land for general manufacturing and storage when certain requirements are met. For instance, machinery may be used in M-2 zones when it does not emit noise above a specified level or cause measurable amounts of vibration. The list of prohibited uses contained in section 12.10 of article 12 is more in the nature of a list of exceptions. New dwellings or conversion of existing buildings into additional dwelling units would be a prohibited land use, as dwellings are provided for in other zones. *Lamb* v. *City of Monroe* (1959), 358 Mich 136. However, section 12.10(a) expressly permits the construction of new dwellings or conversion of existing buildings for dwellings for the use of resident watchmen or caretakers. Certain high nuisance manufacturing processes, otherwise allowable uses, are prohibited by section 12.10(d), with the proviso that the township board of appeals may allow such uses on application and after a public hearing. Article 12 does not provide a list of allowable uses or prohibited uses of such a character that the words "herein prohibited or provided for" could reasonably be said to apply to article 12 provisions alone.

The trial court's admission into evidence of the official list of nonconforming uses compiled in 1959 was permissible. The list was the result of a contemporary construction and application of the zoning ordinance by the board charged with interpretation and administration of the ordinance. While not binding on the court, the list did have evidentiary value on the question of the intent of the ordinances' drafters. The fact that the gun club was declared a nonconforming use within the M-2 zone in 1959 was evidence of the drafters' intent.

Appellant argues that at the date of the hearing no area of the township was zoned M-1 and that, if article 12 is interpreted to refer to the whole ordinance, none of the uses delineated as allowable in M-1 zones could ever be carried in the township. Appellant further argues that some of the uses provided for in M-1 zones bear a character of high public necessity and, therefore, concludes that article 12 cannot reasonably be construed to refer to the entire ordinance because the effect of such a construction would be forever to deprive the township of several types of land use which would be highly beneficial to the township residents. The flaw in this line of argument is apparent from a quick glance at the zoning map. The township is still primarily zoned AG (agricultural district). The course of development is not yet set. The fact that no area is presently zoned M-1 does not preclude future rezoning of areas to M-1 when the pattern of development becomes clear. See *Padover v. Township of Farmington* (1965), 374 Mich 622. All the uses allowed in M-1 districts are not forever foreclosed from the township then, as appellant argues.

We agree with the construction placed on the ordinance by the trial court. The words "not herein expressly prohibited or provided for" contained in article 12 must be construed to refer to the entire ordinance. This being the case, gun clubs are not a permissible use within M-2 zones as they are expressly provided for in AG zones.

Affirmed. No costs, the construction of a public ordinance being involved.

T. G. KAVANAGH, P. J., and J. H. GILLIS, J., concurred.