WINCHESTER v W A FOOTE MEMORIAL HOSPITAL

Docket No. 89196. Submitted May 21, 1986, at Lansing. Decided July 22, 1986.

W. A. Foote Memorial Hospital sought from the City of Jackson Planning Commission a conditional use permit to construct and operate, on hospital property, a helicopter landing pad. The conditional use permit was sought under a section of the city zoning ordinance which permitted such a use but required that the landing pad be located on the parcel of land so as to minimize potential negative effects of noise, air movement, and blowing dust and debris. The hospital sought to have the landing pad located in what was then a parking lot outside the emergency room. At a hearing on the request, nearby residents objected to the proposed location because it caused excessive noise and blew debris onto their property. These nearby residents suggested as alternative locations the hospital roof and a doctor's parking lot on a knoll behind the hospital. The commission rejected the hospital's request for a conditional use permit on the basis that there were other possible sites available and thus the proposed site did not meet the requirement that the pad be located on the parcel so as to minimize potential negative impacts. The hospital sought a rehearing under a provision of the ordinance which permitted a rehearing where it is established to the satisfaction of the commission that there has been a material change in circumstances. The commission granted a rehearing. On rehearing, the hospital argued that the supposed alternative locations for the helipad were sufficiently far away from the hospital emergency room to cause life-threatening delays, the very thing that the use of helicopter service was trying to minimize. The commission granted the conditional use permit for construction of a helipad in the emergency room parking lot, subject to the hospital's complying with a number of safety restrictions and maintaining the helipad and the surrounding area in a manner so as to

REFERENCES

Am Jur 2d, Zoning and Planning §§ 66-68, 281, 317.

Zoning board's grant of new application for zoning change, variance, or special exception after denial of previous application covering same property or part thereof. 52 ALR3d 494.

reduce the noise and debris problems to surrounding landowners. Robert Winchester and other nearby residents brought in Jackson Circuit Court an action against the hospital and the City of Jackson, challenging the board's determination. The court, Charles J. Falahee, J., upheld the decision of the commission. Certain of the plaintiffs appealed. *Held:*

1. A full reading of the minutes of the meeting at which the hospital was denied the conditional use permit indicates that the commission did not decide that the requested site could never qualify but rather indicates a desire on the part of the commission for the hospital to investigate other possible sites which might minimize the negative aspects enumerated in the ordinance. Thus the rehearing was a natural progression of the investigation process that the commission wanted to take place.

2. Even if the rejection of the request was intended as a full and final rejection, the fact that it was based upon the commission's erroneous assumptions that the other sites represented real alternatives is sufficient cause to permit the commission's reconsideration once the erroneous assumptions were brought to its attention.

3. Since a zoning ordinance must be construed as a whole, the commission properly balanced the concerns expressed in the helipad section of the ordinance against the general intent of the ordinance to promote health and safety. Accordingly, the commission properly considered the need for a helipad location which would promote patient health and safety along with the need to minimize negative impacts on nearby residents.

Affirmed.

1. ZONING — CONDITIONAL USE PERMITS — REHEARINGS — MATERIAL CHANGE IN CIRCUMSTANCES.

A city planning commission may properly reconsider an application for a conditional use permit pursuant to a zoning ordinance which permits a rehearing of such a request which has been denied when it is established to the satisfaction of the planning commission that there has been a material change in circumstances where the original denial of the conditional use permit was based upon the commission's assumption that there was a better method to accomplish the objective sought to be obtained by the conditional use permit and the rehearing focused upon showing that there were not, in fact, other better means of accomplishing the stated objective.

2. ZONING — ORDINANCES — JUDICIAL CONSTRUCTION.

Zoning ordinances must be construed as a whole, with regard to

the object sought to be obtained and to the structure of the ordinance as a whole.

*Foster, Swift, Collins & Coey, P.C.* (by *Stephen O. Schultz*), for plaintiffs.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Jack C. Radcliffe, Jr.*), and *Everett C. Perry,* for defendants.

Before: SHEPHERD, P.J., and ALLEN and G. R. COOK,* JJ.

ALLEN, J. Plaintiffs appeal as of right from a November 19, 1985, order of the Jackson Circuit Court, upholding a May 10, 1985, decision of the City of Jackson Planning Commission in which defendant W. A. Foote Memorial Hospital was granted a conditional use permit for the construction and operation of a helicopter landing pad on hospital property. The trial judge set forth the rationale for his decision in an opinion dated November 1, 1985.

The hospital requested the permit to enable it to construct a helipad to facilitate the transportation to other hospitals of patients in need of quick, specialized emergency care. Plaintiffs are residents who live across from the hospital on Ellery Avenue. Plaintiffs opposed the grant of the conditional use permit on the grounds that the proposed site for the helipad was too close to residential areas and created excessive noise, air movement, and blowing of dust and debris.

In August, 1984, at the hospital's request, § 5.82(4)(b) was added to the city's zoning ordinance to permit the construction and operation of a helicopter landing pad in an R-4 zone (the zone

* Circuit judge, sitting on the Court of Appeals by assignment.

of the subject property) as an accessory to a permitted use if the hospital satisfied the requirements for a conditional use permit. On February 21, 1985, pursuant to the above ordinance, the hospital applied for a conditional use permit. The proposed site was near the entrance to the emergency room and within 150 feet of at least one of the plaintiffs' homes.

On March 13, 1985, at a regularly scheduled meeting of the planning commission, a public hearing was conducted on the hospital's application. The minutes of the meeting read in part as follows:

The public hearing was opened and Mr. David Gines, representing Foote Hospital, appeared before the Commission to speak in favor of the granting of the conditional use permit. Mr. Gines had hospital personnel present to respond to any questions the Commission might have. In response to a question from Comr. Fallon, Mr. Gines reported the Federal Aeronautics Administration (FAA) had looked at many potential sites for helicopter land pad at Foote Hospital. Mr. Gines indicated that helicopter pilots had also concurred in this site for safety reasons. He explained the roof site was prohibitive because of the cost. It would cost approximately $500,000 to develop a pad on the roof of the hospital. This corresponds to a cost of $27,000 for the construction of a pad in the proposed location.

In response to a question from Comr. McGaugh, Dr. Mary Ann Mangelsen discussed problems associated with a site in the current doctor's parking lot located north of the new Foote Hospital. She explained the use of this site for a landing pad would require approximately 8 minutes more than the site in the proposed location. The doctor explained the additional 8 minutes was critical for patient well-being. The doctor also explained that most transports originate with the emergency

room. (The proposed pad location is near the emergency room).

After the hospital explained their request, several residents spoke in opposition to the proposed site. They explained that a helicopter was currently landing in the parking lot outside the emergency room and that the landings caused excessive noise and blew debris onto their property. The first resident to speak suggested that the hospital's request be tabled until alternate sites were studied. Another resident suggested an alternative site at "the top of the hill in the doctor's parking lot." A third resident suggested that a better location was "between the buildings in the doctor's parking lot." Another resident suggested construction of an elevated pad on the west side of the hospital with a direct entrance to the third floor.

After the public comments had been heard, Commissioner Fallon reviewed the provisions contained in § 5.82(4)(b)(2) of the city zoning ordinance, which require that "the helicopter pad shall be located on the parcel to minimize potential negative effects of noise, air movement, and blowing dust and debris." He suggested that the roof site might be feasible if the hospital were to charge a $150 service fee for each landing and apply the receipts towards the cost of construction. Commissioner Fallon also suggested a possible site near the intersection of East Michigan Avenue and Ellery Avenue.

The minutes of the conclusion of the meeting read as follows:

> In summary, it was Comr. Fallon's opinion that other sites are available and that the proposed site does not meet the requirement that the parcel be located on the parcel to minimize potential negative impacts.

Motion was made by Fallon and supported by Burzynski to deny the conditional use permit as requested. The motion passed by the following vote: Yeas — 4, Nays — 2, Absent — 3.

On April 10, 1985, at the regularly scheduled meeting of the planning commission, the hospital requested a rehearing. The minutes of that meeting read in part:

Staff reviewed Section 5.206(g) Rehearing on Applications for Conditional Uses. This subsection of the zoning ordinance permits a rehearing of conditional use request when such requests have been denied and it is "established to the satisfaction of the City Planning Commission that there has been a material change in circumstances."

Mr. David Gines, representing Foote Hospital, provided the Planning Commission with a diagram showing alternative helicopter pad placement sites. Mr. Gines reviewed each of the sites for air safety, patient access, environmental impact, security, permanence vs. obsolescence, and cost factors. Mr. Gines attempted to demonstrate that the site originally proposed for the pad was the only feasible site, especially when viewed from a patient well-being standpoint. The information Mr. Gines provided indicated that both of the consultants engaged by the hospital to analyze helipad placement had agreed on the site proposed by the hospital.

Motion was made by Comr. McAllister and supported by Comr. Stern that based on new site evaluations presented by Foote Hospital, the Planning Commission determine [sic] that there has been a material change in circumstances and a rehearing be scheduled.

In discussion [sic] the motion, one Commissioner expressed an opinion that circumstances had not changed in the request for the conditional use. Other Commissioners felt that a change in circumstances had occurred and that the hospital had

more thoroughly evaluated new sites and that this evaluation revealed findings resulting in change of circumstance.

The motion to allow the rehearing passed by the following vote: Yeas — 4, Nays — 3, Abstain — 1, Absent — 1.

On April 17, 1985, the hospital filed a second application for a conditional use permit. With the exception of the date, the second application was identical to the first.

On April 26, 1985, the planning commission met with representatives of the hospital and viewed the proposed and alternate landing sites. The intention of the planning commission to attend such a meeting was reported in a local newspaper on April 15, 1985. However, the exact date of the meeting was not announced until noon on April 25, 1985, when a notice was posted at city hall.

On May 8, 1985, at the regularly scheduled meeting of the planning commission, a second public hearing was conducted. After the public hearing was closed, the planning commission approved the hospital's application by a 9-to-0 vote with the following conditions:

1. Remedial measures will be installed to rectify all objections itemized by the Federal Aeronautics Administration (FAA) regarding the safe utilization of this site for helicopter landings/takeoffs. Documentation verifying FAA approval will be supplied to the City Planning Commission upon receipt.

2. No aircraft refueling, repair, maintenance and/or storage will take place at the proposed helipad.

3. The large oxygen tank (approx. 22 feet tall) will be mounted horizontally to reduce its height to approximately 6 feet, then it will be surrounded with a sand filled concrete block wall, and covered with a roof.

4. Landscaping around the helicopter pad will include a 2'6" cyclone fence, and a two tiered (2' and 3') green barrier of plantings designed to reduce the impact of blowing dust and debris on the adjacent neighborhood as indicated in hospital site plans. The green barrier will extend to include trees planted on the east side of Ellery Avenue only upon approval of a majority of the property owners in the landing area.

5. The hospital will clean (vacuum and/or rinse) the pad and surrounding area prior to helicopter landings to minimize the loose dust and debris subject to disruption by helicopters.

6. The hospital will comply with fire safety requirements imposed by the Jackson Fire Department pertaining to helicopter landings/takeoffs.

Plaintiffs sought review of the commission's decision in Jackson Circuit Court. The parties filed briefs and presented oral arguments. On November 1, 1985, the trial judge upheld the decision of the planning commission in a written opinion and a corresponding order dated November 19, 1985.

Two issues are raised on appeal: (1) whether a material change in circumstances occurred warranting the planning commission's reconsideration of its earlier denial of the hospital's request for a permit;[1] and (2) whether the chosen site for the helicopter landing pad meets the mandatory standards set forth in the city's zoning ordinance.

ISSUE I

Section 5.206(g) of the City of Jackson Zoning Ordinance pertaining to applications for conditional use permits provides:

[1] The brief of defendant hospital states this issue: "Whether the defendant planning commission's determination that a material change in circumstances had occurred was arbitrary, capricious, or clearly erroneous? [sic]"

> Such application shall not be resubmitted to the city planning commission for at least one year from the date of the denial, excepting when it is *established to the satisfaction of the city planning commission that there has been a material change in circumstances.* [Emphasis supplied.]

Plaintiffs argue that there was no "material change in circumstances"; that, while the phrase "a material change in circumstances" has never been interpreted by a Michigan court, other jurisdictions have held that the change must be a change in the particular circumstances or conditions which induced the prior denial, *Easley v Metropolitan Bd of Zoning Appeals of Marion Co,* 161 Ind App 501; 317 NE2d 185 (1974); that a mere "restudy" will not justify reconsideration, *Aronovitz v Metropolitan Dade Co,* 290 So 2d 536 (Fla App, 1974); and that the change must run to the very basis upon which the first denial was made and the change must have occurred during the time period between the two applications, *Laurel Beach Ass'n v Zoning Bd of Appeals of the City of Milford,* 166 Conn 385; 349 A2d 834 (1974); *Costa v Gagnon,* 455 A2d 310 (RI, 1983).

Noting that Michigan courts have interpreted the phrase "material change in circumstances" in the context of the doctrine of res judicata [*Prawdzik v Heidena Bros, Inc,* 352 Mich 102; 89 NW2d 523 (1958)], plaintiffs argue the same doctrine should be extended to zoning decisions by an administrative body. Under the doctrine of res judicata, circumstances or arguments that existed, or could have been made, prior to the initial court decision simply cannot form the basis for determining that a "material change in circumstances" has occurred. Because the two applications for the conditional use permit were identical, the issues discussed at the first and second hearings were

identical including the feasibility or negative impact of alternate sites, and each of the requests for a permit was for the identical location and circumstances, plaintiffs contend res judicata precludes the zoning board from finding a material change in condition.

Defendants contend that at the first hearing the commission believed that at least one "better" site existed but, after studying the alternate site or sites, found there was no better site and that this change of mind after further investigation of the facts constituted "a material change in circumstances." Defendants further argue that plaintiffs' construction of § 5.206(g) is too narrow and is contrary to the language "established to the satisfaction of the city planning commission"—these being words which give latitude and discretion to the commission. Finally, defendants refer to the well established rule of administrative law that a planning commission's decision may not be overturned unless it is shown that the commission acted arbitrarily or abused its discretion or that the commission's decision is not supported by competent, material or substantial evidence on the whole record. *Janigan v Dearborn,* 336 Mich 261; 57 NW2d 876 (1953); *Village Builders, Inc v Town Planning & Zoning Comm of the Town of Farmington,* 145 Conn 218; 140 A2d 477 (1958); *Ranney v Bd of Appeals of Nantucket,* 11 Mass App 112; 414 NE2d 373 (1981). The trial court agreed with defendants' position. We, too, agree.

A full reading of the minutes of the March 13, 1985, meeting indicates that, at that meeting, the commission did not decide that the requested site could *never* qualify under § 5.82(4)(b) of the ordinance which requires that the "helicopter pad shall be located on the parcel to minimize potential negative aspects of noise, air movements, and

blowing of dust and debris." Instead, the minutes reflect that there might be a "better" site or sites which would minimize the negative aspects of noise, air, blowing dust and debris, to a greater degree than would the site proposed at the March 13, 1985, meeting. The hospital was to inquire into these alternate sites, determine whether any of them would better minimize the described negative aspects, and report its findings at a subsequent meeting of the planning commission. The hospital's subsequent report found grounds for rejecting each of the new suggested sites. Based upon this new information, the commission then made its full and final decision.

Alternatively, assuming arguendo that the commission's first rejection was intended as a full and final rejection, it is clear from the minutes that the commission's reason for doing so was the commission's belief that there was at least a "better" site somewhere else. But once facts were reported to the commission indicating that the commission's underlying assumption for rejecting the proposal was in error, "a material change in circumstance" came into being justifying the commission in reversing its first decision. This was the holding of the Massachusetts Court of Appeals in *Ranney v Bd of Appeals of Nantucket, supra.* There, plaintiff applied to the zoning board of appeals for a special permit to build an addition to a motel. The board refused to grant the permit on May 12, 1978. On June 7, 1978, plaintiff filed a second application containing modest revisions in the lighting, insulation and landscaping of the proposed addition. On July 27, 1978, the board granted the permit. Persons living in the vicinity appealed claiming that the changes in the proposed structure did not constitute a material change in condition as required by the city ordi-

nance. Holding that the grant of permit should be sustained, the Court gave two reasons.

> To the extent that the local board makes findings that a reapplication is accompanied by circumstances which are specifically and materially different, such a local determination ought to receive the deference from a reviewing court which is generally accorded to the discretionary aspects of local zoning decisions. . . . Whether the plans or the surrounding conditions have changed sufficiently to justify a reapplication during the moratorium period is principally for the local board to determine.

> \* \* \*

> The board's findings also suggest that the board regarded itself as having acted on erroneous information in concluding initially that the proposed motel addition would adversely affect traffic on North Beach Street and the value of nearby residential properties. *To the extent that the board thought itself in error about underlying assumptions concerning the proposal, this constituted a change of circumstances which permitted the board to entertain a second application for zoning relief.* We have considered and reject the objectors' contention that a hearing on a second application should be limited to evidence received at the hearing on the first application. No such limitation is implied, let alone expressed, in the statute or our decisions. [414 NE2d 376-377. Citations omitted, emphasis added.]

Like the situation in *Ranney,* the changes which the Jackson Planning Commission found to have occurred were the submission of new information and the addition of conditions which satisfied the commission's previous reservations.

ISSUE II

Plaintiffs contend that the site for the helipad,

as approved by the planning commission, fails to meet the requirement of § 5.84(4)(b)(2) that the landing pad "shall be located on a parcel to minimize potential negative effects of noise, air movement, and blowing dust and debris." Plaintiffs point out that two other sites, each FAA approved,[2] would create fewer of the negative impacts, i.e., noise, air movement and blowing dust and debris, than the site which was approved. One of these was the roof of the hospital, a site rejected solely for cost considerations. According to plaintiffs, cost considerations are not mentioned in § 5.84(4)(b). The second site was on top of a hill into which the side of the hospital was built. Entrance to the hospital could be gained through a third floor doorway.

The flaw in plaintiffs' argument is the assumption that only two matters may be considered by the commission, viz.: FAA approval and location to minimize negative effects of noise, moving air, blowing dust and debris. Zoning ordinances must be construed as a whole, with regard to the object sought to be obtained and the general structure of the ordinance as a whole. *Prevost v Macomb Twp,* 6 Mich App 462, 467; 149 NW2d 453 (1967), lv den 379 Mich 768 (1967), quoting *Fass v Highland Park,* 320 Mich 182, 186; 30 NW2d 828 (1948), on reh 321 Mich 156; 32 NW2d 375 (1948). Further, § 5.84(4)(b) expressly states that "in accordance with the provisions of § 5.206 of this code, conditional uses shall be permitted." Section 5.206 sets forth the requirements that the city must consider *in general* when deciding whether to approve a conditional use permit and provides in pertinent part:

---

[2] Section 5.82(b)(1) of the ordinance requires that helicopter landing pads carry FAA approval as to placement, operation, maintenance and other requirements.

(d) *Standards on which decisions will be based.* The city planning commission shall grant approval of a conditional use only upon determining that the proposed land use or activity:

(1) Promotes the intent and purpose of the zoning ordinance;

(2) Is compatible with adjacent uses of land, the natural environment, and the capacities of public service and facilities affected thereby;

(3) Is consistent with the public health, safety and welfare;

(4) Will be harmonious with and in accordance with the general objectives or with any specific objective of the city's land use plan of current adoption; and

(5) The location and size of the proposed use, the nature and intensity of the principal use and all accessory uses, the site layout and its relation to the streets giving access to it, shall be such that traffic to and from the use, and the assembly of persons in connection therewith will not be hazardous or otherwise detrimental to the neighborhood, nor unduly conflict with the normal traffic of the neighborhood.

When read together, it is our opinion that the commission was empowered to consider the community's health, safety, and welfare, and to balance the community interests against the negative impact upon plaintiffs. As stated in defendants' brief, the commission balanced the two interests by considering the distance from each potential site to the emergency room, given the medical testimony of the effects upon a patient's life of the time required to transport a patient from the emergency room to the helicopter. The commission properly refused to select an alternate site which minimized noise and dust more than the selected site where, to do so, it would be negating the very reason for the helipad in the first place.

The roof site on the hospital was rejected not only for reasons of cost but also for flight safety (extreme updraft) and the excessive time it would take to move a patient to and from the emergency room. Likewise, the site on the top of the hill is in the same area, if not the identical space (i.e., doctors' parking lot), which was deemed unsatisfactory because of the length of critical patient transport time. As noted earlier in this opinion, all of the suggested sites were reviewed by David Gines at the second meeting of the planning commission. At the conclusion of this review, it was concluded the overall interests of the community could best be served by the site proposed by the hospital and that the negative impact on the adjoining residents could be minimized by the imposition of special conditions including constructing a cyclone fence, planting a hedge and trees, and vacuum cleaning of the site to reduce dust, noise and debris.

In conclusion, we find that other sections than § 5.82(4)(b) could be considered and that under these other sections the Jackson Planning Commission could and did properly grant a permit for a helipad requested by the hospital.

Affirmed. No costs, a question of public interest being involved.